360 So.2d 1386 (1978)
Mrs. Evelyn CASEY, Plaintiff-Appellee,
v.
The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant-Appellant.
No. 6589.
Court of Appeal of Louisiana, Third Circuit.
June 28, 1978.
Rehearing Denied August 15, 1978.
*1387 Raggio, Farrar, Cappel & Chozen, R. W. Farrar, Jr., Lake Charles, for defendant-appellant.
Baggett, McCall, Singleton & Ranier by Robert C. McCall, Lake Charles, for plaintiff-appellee.
Before DOMENGEAUX, WATSON and GUIDRY, JJ.
DOMENGEAUX, Judge.
This case involves a suit brought by a widow to collect death benefits for the death of her husband, George R. Casey, who was insured by a group insurance policy issued by defendant, Prudential Insurance Company.
There is no factual dispute. The case was tried on a joint stipulation of fact, which we quote, in part, as follows:
"[P]laintiff is the widow of George R. Casey, who died in St. Patricks Hospital at Lake Charles, Louisiana on July 13, 1973 at approximately 10:45 a. m. On and before June 11, 1973, decedent had been employed as a truck driver by Diversified Auto Freight, Inc., Lake Charles, Louisiana, and, during the course of his employment, had a group insurance policy with Prudential Insurance Company of America providing, among other benefits, life insurance coverage on him in the amount of $7,500.00 with Evelyn Casey as beneficiary subject to its terms, conditions and limitations. The said employment by Diversified Auto Freight, Inc. terminated as of June 11, 1973.
The monthly premium for the coverage afforded George R. Casey under the policy issued by Prudential Insurance Company of America was prorated, and paid for, as follows:

 MONTHLY PAID BY PAID BY
COVERAGE PREMIUM EMPLOYEE EMPLOYER
Life Insurance $ 3.68 $ 0 $ 3.68
Weekly Income 3.15 1.02 2.13
Employee Medical Care 11.19 0 11.19
Dependant Medical Care 20.80 20.80 0
Long Term Disability 1.70 1.70 0
 ______ ______ ______
 TOTAL $40.52 $23.52 $17.00

This premium was paid on a quarterly basis, in advance, by Diversified Auto Freight, Inc. to the W. E. Fowler & Co. Agency, St. Louis, Missouri, who was the representative designated by Prudential Insurance Company of America for the collection of the premium on the herein concerned policy. At the beginning of *1388 the next quarterly billing period, a deduction (credit) would be taken for premiums paid on employees who had terminated during the previous quarter.
Thirdly, the premium for the second quarter (April, May and June) of 1973 was paid by Diversified Auto Freight, Inc. to W. E. Fowler & Company Agency on April 30, 1973 and the premium for the third quarter (July, August and September) of 1973 was paid on July 19, 1973 with a credit having been given to Diversified Auto Freight, Inc. for the premium collected by reason of the coverage of George R. Casey for the month of June, 1973 when he was shown to have been terminated as of May 31, 1973. Accordingly, the premium due by reason of the coverage by Prudential Insurance Company of America of George R. Casey was initially paid through June 30, 1973 but, by virtue of the credit, the charge made for coverage during the month of June, 1973 was returned to Diversified Auto Freight, Inc.
Fourthly, the premiums paid by the employee, George R. Casey, was deducted from his pay check with the last deduction being from the check of June 11, 1973, which deduction was in the amount of $23.82 and represented payment of the premiums to be paid by the decedent for a period of one month. This premium has never been returned to the decedent, his heirs, and/or his widow.
Finally, proof of claim was submitted by plaintiff and was being processed by Prudential Insurance Company of America on or before September 28, 1973, but said claim was ultimately rejected by the said insurer."
As a consequence of the claim being rejected, plaintiff, Mrs. Evelyn Casey, widow and beneficiary of the decedent, filed suit on October 7, 1975, in order to recover the full amount due under the policy, together with penalties. Judgment was rendered awarding the principal amount, $7,500.00, plus penalties, pursuant to La.R.S. 22:656. Defendant appeals devolutively.
Four errors are specified on appeal, viz.: (1) The trial court erred in finding that a premium had been paid for the month of June; (2) The trial court erred in holding that La.R.S. 22:176 was applicable to this case; (3) The trial court erred in finding that the law of the state of Missouri was not applicable; and (4) The trial court erred in awarding statutory penalties under La. R.S. 22:656.
Prudential's first contention, with regard to payment of a premium for the month of June, is without merit. It contends that since the premium for decedent's coverage in the month of June was credited to his employer on July 19, 1973, which was several days after the death, no premium was paid for June; hence, the employee was not covered.[1]
We think it almost too elementary to state, but will do so because the argument is raised, that an insurer, who issues a contract of life insurance, cannot unilaterally terminate coverage for no reason other than simply paying the premium back, after the covered individual has died.
Having determined that a premium was paid, we reach the question of the effect of termination of employment in relation to coverage under the policy. This involves defendant's second contention concerning the applicability of La.R.S. 22:176.
The policy in question provides:
"E. TERMINATION OF EMPLOYEE INSURANCE
The Employee Insurance of an Employee under a coverage will automatically terminate when:
(1) he ceases to be a member of the coverage classes for the insurance because *1389 of termination of employment (described below) or for any other reason, or
(2) his class is no longer included in the coverage classes for the insurance, or
(3) the provisions of the Group Policy for the insurance terminate, or
(4) if the insurance is contributory, any contribution required of him for any insurance under the Group Policy is not made when due.
Termination of EmploymentFor insurance purposes, an Employee's employment will be considered to terminate when he is no longer actively engaged in work on a full-time basis for the Employer. However, if absence from such full-time work is then of a type set forth in the Coverage Schedule for the insurance, the Policyholder may, without discrimination among persons in like circumstances, consider the Employee as not having terminated his employment for insurance purposes and, while such absence is of any such type, as continuing to be a member of the coverage classes for the insurance up to any applicable time limit in the Schedule."
Under the policy, coverage terminates when employment is terminated. Under its definition for termination of employment, the decedent would be considered to have terminated his employment on June 11, 1973, since his absence from full time work was not "of a type set forth in the Coverage Schedule for the insurance." Hence, under the policy, coverage also would have terminated on June 11, 1973. However, La.R.S. 22:176 provides, in pertinent part:
"Each policy of group life insurance as defined in R.S. 22:175 shall contain in substance the following provisions or, at the option of the insurer, provisions which in the opinion of the commissioner of insurance are not less favorable to the policyholder, . . ..

. . . . .
(9) Continuation to end of premium period: A provision, . . . that the termination of the employment of any employee or the membership of a member, shall not terminate the insurance of such employee or member under the group policy, until the expiration of such period for which the premium for such employee, or member, has been paid, not exceeding thirty-one days."
Under the statute, as a minimum requirement, the policy must provide that insurance coverage will continue after termination of employment until the end of the premium period, not exceeding thirty-one days. We feel that since the policy in question afforded protection less than the minimum required by Louisiana law, the statutory provision must prevail over that stated in the policy. Although insurers are free to limit their liability and may generally impose whatever conditions they please upon their obligations, these limitations and conditions cannot conflict with statutes and public policy. Graham v. American Casualty Company of Reading, Pennsylvania, 261 La. 85, 259 So.2d 22 (1972); Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972); Guillot v. Travelers Indemnity Co., 338 So.2d 334 (La.App. 3rd Cir. 1976), writ dismissed, 341 So.2d 408 (La.1977). Thus the decedent in this case was fully covered for death benefits through June of 1973.
However, since the decedent died on July 13, 1973, we must determine whether there is a basis for allowing the beneficiary to collect after coverage had expired. Turning to the policy in question, we find the following provisions:
"A. DEATH BENEFIT WHILE A COVERED INDIVIDUAL.
If the Employee dies while a covered individual, the amount of his insurance under this Coverage is payable when Prudential receives due written proof of death.
B. DEATH BENEFIT DURING CONVERSION PERIOD.
This benefit is payable if the Employee dies within thirty-one days after he ceased to be a covered individual and while entitled (under Section D) to a conversion of his insurance under this Coverage to an individual policy.

*1390 An amount equal to that which might have been issued under the individual policy is payable under the Group Policy when Prudential receives due written proof of death, whether or not the Employee applied for conversion.

. . . . .
D. CONVERSION PRIVILEGE.
An Employee ceasing to be a covered individual may convert his insurance under this coverage to an individual policy of life insurance, without evidence of insurability, if he then ceases to be insured for term life insurance under the Group Policy by reason of
(1) termination of his membership in the classes eligible for such insurance or
(2) termination, by amendment or otherwise, of the provisions for such insurance as to the eligible class of which he is a member, provided that at the date of such termination he has been so insured under such provisions (or under such provisions and any Prudential rider or group policy replaced by such provision) for at least five years prior to such termination date.
Any such conversion shall be subject to the remainder of this Section.
Availability: The individual policy will be issued only if written application and the first premium payment for it are made to Prudential within thirty-one days after such cessation."
Applying these provisions to the chronology of this case, we find that the death benefit was still payable at the time of decedent's death. The employee was discharged from employment on June 11, 1973. He remained a covered individual through the end of the premium period on June 30, 1973. At this time, he became eligible to convert the group coverage to an individual policy. This eligibility continued, by the express provisions of the policy, for thirty-one days after the employee ceased to be a covered individual, viz., July 31, 1973. Since the death on July 13, 1973, fell within thirty-one days after the employee ceased to be a covered individual and within the period in which the employee would have been entitled to convert to an individual policy, the death benefit was payable under Section B to the beneficiary, plaintiff herein.
Defendant's third contention, concerning application of Missouri law, was first raised in his motion for a new trial, which was denied. It is reurged on appeal. Defendant gives the following reasons: The policy was executed in the state of Missouri; premiums were paid to the defendant's agent, the W. E. Fowler & Company Agency, in Missouri; and the policy provides that the law of Missouri should apply.
We think that the law of Louisiana, rather than the law of Missouri, is applicable to this case. We adopt with approval the written reasons of the trial judge for his denial of a new trial, relevant on this point:
"LSA-R.S. 22:629 provides that:
`A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, shall contain any condition, stipulation, or agreement:
(1) Requiring it to be construed according to the laws of any other state or country except as necessary to meet the requirements of the motor vehicle financial responsibility laws of such other state or country; or
(2) Depriving the courts of this state of the jurisdiction of action against the insurer; or'
The case was submitted by a joint stipulation of fact wherein it was stipulated as follows:
`b) Exhibit 2. Group Insurance Certificate issued by The Prudential Insurance Company to George Roy Casey under its Group Policy GM20401;
c) Exhibit 3. Group Insurance Policy issued by The Prudential Insurance Company of America to Central America Automobile Dealers Insurance Trust, which included Diversified Auto Freight, Inc., Lake Charles, Louisiana, being its Group Policy No. GM20401;'
*1391 It was stipulated that the policy issued to Central America Automobile Dealers Insurance Trust, which issuance included Diversified Auto Freight, Inc., Lake Charles, Louisiana. Further, George Casey, of Lake Charles, Louisiana, was employed by Diversified Auto Freight, Inc. of Lake Charles at the time of his death . . . .. The certificate was issued by Prudential to Casey. . . . ..
Under the provisions of LSA-R.S. 22:629, the stipulation and the circumstances existing, the law of Louisiana shall be applied to the insurance contract in dispute, even though the policy provides otherwise."
Defendant's fourth and final contention is that penalties were improperly awarded. We feel, as did the trial judge, that the insurer failed to give effect to the clear provisions of La.R.S. 22:176(9) and was therefore liable for the six percent (6%) penalties provided for by La.R.S. 22:656.
Considering the fact that its own policy provided for payment of death benefits within thirty-one days after coverage ceased, and the fact that the insurer should have known that decedent was covered through June, we do not feel that the insurer had just cause to refuse payment. See Rushing v. American Income Insurance Company, 274 So.2d 458 (La.App. 3rd Cir. 1973); West v. Lincoln Income Life Insurance Company, 239 So.2d 379 (La.App. 4th Cir. 1970); Albert v. Cuna Mutual Insurance Society, 255 So.2d 170 (La.App. 3rd Cir. 1971). See also Reichert v. Continental Insurance Company, 290 So.2d 730 (La.App. 1st Cir. 1974), writ denied 294 So.2d 545 (La.1974) (Penalty provisions provided for by La.R.S. 22:656, 657, and 658, have common purpose and should be interpreted similarly.).
For the above reasons the judgment of the District Court is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] We think it interesting to note that credit for the June premium originally arose out of an error. The Quarterly Billing Statement for Diversified issued by Prudential's billing agent in St. Louis, Missouri, stated that no credit was to be given for employees who terminate employment in the third month of a quarter. The credit was given in this case, as stated in the stipulation of facts, because the decedent was erroneously shown to have been terminated from employment on May 31, 1973, instead of the correct date, June 11, 1973.