WICKER, Judge.
This appeal arises from a lawsuit for damages filed on behalf of Mary Pareti and Paul Pareti, III against Pennsylvania General Insurance Company (erroneously referred to as General Accident Insurance Company), Pennsylvania’s insureds, Edward J. Schneller and his wife Mrs. Edward J. Schneller, and plaintiffs’ uninsured/underinsured motorist carrier, Sentry Indemnity Company (Sentry). After Sentry filed a third party action against the Schnellers, the Schnellers sought a defense from Pennsylvania. Pennsylvania, however, had settled the main demand, exhausting its policy limits. The trial court dismissed the Schnellers’ third party demand for attorney’s fees finding that Pennsylvania owed no duty to defend based upon the clear language of the contract. We reverse and remand.
On August 1,1985 plaintiffs settled their claim[1] against the Schnellers and Pennsylvania, acknowledging the receipt of $50,-000.00. The following language was added to the compromise:
Mary Pareti and Paul P. Pareti III specifically reserve their rights to proceed against all other parties including, but not limited to, Sentry Indemnity Co.
On the following day, Sentry filed a third party action against the Schnellers seeking indemnification and/or contribution. The Schnellers filed a motion for summary judgment on the basis of their being dismissed from the suit. The motion was denied.[2] Pennsylvania declined to defend the Schnellers on Sentry’s third party demand and the Schnellers obtained other counsel. Thereafter, the Schnellers filed a third party demand against Pennsylvania for failure to defend, seeking reimbursement of attorney's fees.
Sentry’s third party demand was settled on the date of trial. Therefore the sole issue before the trial judge was whether Pennsylvania owed a defense to the Schnel-lers on the third party demand filed by Sentry.
At the hearing on the third party claim for attorney’s fees, the trial judge was presented with the following pertinent language in the policy:
We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. [Emphasis added.]
The trial judge found the language clear and unambiguous. He concluded that since Pennsylvania paid its policy limits and settled the claim with the it no longer had a duty to defend under the language of the policy.
On appeal appellants now assert the following specification:
“Whether or not the [trial judge] was wrong in deciding that Pennsylvania General Insurance Company did not owe the Schnellers a defense or the cost of defense.”
In discussing the termination of the insurer’s duty to defend, it has been noted that:
*227 A sharp division exists among jurisdictions over whether the duty to defend terminates upon exhaustion of the indemnity limits of the insurance policy [footnote omitted.] On one hand, courts have held, without regard to the language of the insurance policy, that the insurance carrier cannot absolve itself of the duty to defend by paying amounts up to the policy limits [footnote omitted.] These courts have held that the duty to defend is independent of the duty to pay. Generally, these courts disregard a defense clause of a policy that attempts to extinguish the duty to defend upon policy indemnification [footnote omitted.] The courts reason that, in situations in which the insured causes multiple injuries, the insurance carrier will pay the coverage limits to terminate the entire defense obligation [footnote omitted.] Therefore, to prevent an early escape by the insurance carrier, these courts hold that the duty to defend is independent and continues after exhaustion of policy limits [footnote omitted.]
Other courts, however, hold that the duty to defend is dependent upon the duty to pay [footnote omitted.] These courts hold that the insurance carrier does not have a duty to defend after the insurance carrier pays the maximum amount required under the insurance contract [footnote omitted.] According to these courts, the primary obligation imposed on an insurer is to indemnify the insured [footnote omitted.] The other obligations of the insurance carrier are designed only to implement the primary obligation of indemnification [footnote omitted.] Hence, the obligation of defense exists solely to better enable an insurance carrier to indemnify the insured. R.W. Bollar, Termination of the Duty of an Insurance Carrier to Defend: Did the California Supreme Court Send the Wrong Signal? 17 PAC.LAW Jl. 283-307, at 295 (1985).
In 15 W.S. MCKENZIE & H.A. JOHNSON, III, LOUISIANA CIVIL LAW TREATISE: INSURANCE LAW AND PRACTICE, Section 213, at 379 (1986) the authors discussed the following restriction contained in many policies:
The company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company’s liability has been exhausted by payment of judgments or settlements.
McKenzie and Johnson also noted that appellate courts in Louisiana had not yet addressed that provision. Nevertheless, they noted that “neither tender of policy limits nor deposit of the limits in the registry of the court would be sufficient to relieve the insurer of its obligation to defend [as the provision quoted above] requires exhaustion of policy limits through payment of settlements or judgments.” Id. at 379.
The restriction on the insurer’s duty to defend discussed by McKenzie and Alston was also explained recently by the Wisconsin Supreme Court in Gross v. Lloyds of London, Ins. Co., 121 Wis.2d 78, 358 N.W. 2d 266 (1984). In Gross, supra at 270, the court referred to the 1966 revision referred to by McKenzie and Alston in insurance policies which clarified “when the insurer’s duty to defend the insured has been satisfied by providing that the duty to defend ceases after the policy limits are exhausted either by payment of judgments or settlements.’’ [Emphasis supplied].
In the case at bar, however, the contract language does not specify that the duty to defend ends when the policy limits have “been exhausted by payment oí judgments or settlements.” [Emphasis supplied]. 15 W.S. McKenzie & H.A. Johnson at 379. Instead it merely states that the duty to “defend ends when [the] limit of liability for this coverage has been exhausted.”
Although the policy states that “Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted” it does not state in what manner the limit of liability must be exhausted in order to trigger termination of the duty to defend.
Furthermore, the policy also states that “In addition to our limit of liability, we will pay all defense costs we incur.” Moreover, it also contains the following language, *228 “We will settle or defend, as we consider appropriate, any claim or suit asking for these damages.” [Emphasis supplied].
On the one hand the provision states that the carrier will “defend ... any claim or suit asking for [d]amages” while also stating that the duty to “defend ends when [the] limit of liability ... has been exhausted.” Furthermore the contract at one point equates the duty to defend with indemnification by stating that the duty to defend ends when the limits of liability are exhausted. In another sentence, however, the duty to defend is written as being broader than the duty to indemnify when it states that “In addition to our limit of liability, we will pay all defense costs we incur.” [Emphasis supplied]. We disagree with the trial court and find that the provision terminating the defense upon the exhaustion of the policy limits is ambiguous since “[a]n insurance contract must be interpreted as a whole.” Martin v. Phillips, 356 So.2d 1016,1019 (La.App. 1st Cir.1977). See also, Carney v. American Fire & Indent. Co., 371 So.2d 815 (La.1979); Pinell v. Patterson Services, Inc., 491 So.2d 637 (La.1986).
Moreover, in Reichert v. Continental Insurance Company, 290 So.2d 730, 733 (La. App. 1st Cir.1974), writ denied 294 So.2d 545 (La.1974), the court considered the interpretation of the meaning of the statement, “ ‘the company shall defend any suit.’ ” The Reichert court considered termination of the duty to defend in a different context. It considered the duty insofar as appealing a judgment on the issue of quantum when the only issue was exposure of the insured beyond the limits of its insurance carrier. Nevertheless it interpreted the above identical phrase as “not qualified, limited or restricted in any manner whatsoever.” Id. at 733.
Furthermore, a limitation in an insurance contract must be free of ambiguity. Carney, supra at 818 and the cases cited therein. We therefore follow Louisiana jurisprudence which construes an ambiguity in an insurance contract in favor of the insured, unless such an interpretation would lead to absurd results. Carney, supra at 818 and the cases cited therein.
We are also mindful of the well-established rule in Louisiana “that the duty of an insurer to defend its insured is broader than its liability for damage claims.” Reichert, supra at 733. See also, American Home Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253, 259 (1969); Meloy v. Conoco, Inc., 504 So.2d 833 (La. 1987). As explained in Meloy, supra at 838, “the insurer’s duty to defend is determined by the allegations of the injured plaintiff’s petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage.”
We conclude that the trial court’s determination that no ambiguity existed in the contract was clearly wrong. We therefore reverse the judgment dismissing the Schnellers' claim against Pennsylvania for attorney’s fees.
Courts may inquire into the reasonableness of attorney’s fees. City of Baton Rouge v. Stauffer Chemical, 500 So.2d 397 (La.1987). However, the trial judge did not award attorney fees. The record is devoid of any evidence regarding the amount of attorney fees sought by the Schnellers and the reasonableness of that amount. We have no alternative but to remand this case to the trial court to award reasonable attorney fees. Lutz v. Jefferson Parish School Board, 503 So.2d 106 (La.App. 5th Cir. 1987).
Accordingly, for the reasons stated, the judgment dismissing the Schnellers’ claim against Pennsylvania in which they seek attorney fees is reversed. This case is remanded to the trial court for the setting of reasonable attorney’s fees against Pennsylvania General Insurance Company.
REVERSED AND RENDERED; REMANDED.

. Plaintiffs’ claims against Pennsylvania and Schneller were subsequently dismissed.

. On March 26, 1986 the Schnellers applied for writs to this circuit in No. 86-C-193. On April 2, 1986 we denied writs and held that "On the showing made we see no reason to exercise our supervisory jurisdiction because the applicant has an adequate remedy by appeal."